UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PETER AND KATHERINE VON BANK, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-40205-FDS |
| v. | ) ) ) ) | |
| JEFFREY AND RENAE SERSLAND, DAVID GILL, MEDICAL UNIVERSITY OF THE AMERICAS, BELIZE, LP, MEDQUEST TECHNOLOGIES, LP, TRUSTEE, SERSLAND SETTLEMENT TRUST, MEDICAL UNIVERSITY OF THE AMERICAS BELIZE, LLC f/k/a MEDQUEST TECHNOLOGIES, LLC, And NORMAN HANS REICHSTEINER, MD | ) ) ) ) ) ) ) ) ) ) ) | |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF
JEFFREY SERSLAND, MD**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, the defendant Jeffrey

Sersland, MD ("Dr. Sersland") answers the corresponding numbered paragraphs of the

Complaint of plaintiffs Peter and Katherine Von Bank ("the Von Banks") as follows:

1.      Paragraph One of the Complaint is introductory in nature, and therefore no

response is required.  To the extent that Paragraph One contains factual averments

directed at Dr. Sersland, no response is required as those averments are compound,

vague, ambiguous, not susceptible to a meaningful response, and are in violation of

Fed. R. Civ. P. 8(a)(2) and 8(e)(1).  Dr. Sersland denies that he engaged in any

fraud, breach of contract, or any other unlawful conduct of any kind towards the

Von Banks.  To the extent any further response is required, denied.

**PARTIES**

2.      No response by Dr. Sersland is required to Paragraph 2, as the allegations of

Paragraph 2 are directed at other parties.

3.      No response by Dr. Sersland is required to Paragraph 3, as the allegations of

Paragraph 3 are directed at other parties.

4.      No response by Dr. Sersland is required to Paragraph 4, as the allegations of

Paragraph 4 are directed at other parties.

5.      Admitted.

6.      Admitted.

7.      No response by Dr. Sersland is required to Paragraph 7, as the allegations of

Paragraph 7 are directed at other parties.

8.      No response by Dr. Sersland is required to Paragraph 8, as the allegations of

Paragraph 8 are directed at other parties.

9.      No response by Dr. Sersland is required to Paragraph 9, as the allegations of

Paragraph 9 are directed at other parties.

10.     No response by Dr. Sersland is required to Paragraph 10, as the allegations of

Paragraph 10 are directed at other parties.

**PARTIES AND JURISDICTION**

11.     No response is required to the allegations of Paragraph 11 because those

allegations embody legal conclusions.

12.     No response is required to the allegations of Paragraph 12 because those

allegations embody legal conclusions.  Dr. Sersland admits that he resides in the

Commonwealth and has transacted business in the Commonwealth, but is without

knowledge or information sufficient to form a belief as to whether other
defendants reside in, have a usual place of business, or transacted business in the
Commonwealth. Dr. Sersland denies that Massachusetts is the proper forum for
this action, which is governed in whole or in part by the laws of Belize. Dr.
Sersland denies that the alleged events described in the Complaint took place
primarily or substantially in Massachusetts.

## FACTS

13.    The first sentence of Paragraph 13 is denied as to the date, but otherwise admitted.
       The second and third sentences of Paragraph 13 are admitted.

14.    Admitted.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Denied.

19.    Admitted.

20.    The first sentence of paragraph 20 is denied, except that it is admitted that the Von
       Banks received a 20 percent interest in MUAB. The second and third sentences of
       paragraph 20 are admitted.

21.    Denied.

22.    Dr. Sersland is without knowledge or information sufficient to form a belief as to
       the truth of the allegations of Paragraph 22, to the extent those allegations are
       directed at other parties. To the extent any of the averments of Paragraph 22 are
       directed at Dr. Sersland, those averments are compound, vague, ambiguous, and

not susceptible to a meaningful response. To the extent any further response is required of Dr. Sersland, denied.

23. No response by Dr. Sersland is required to Paragraph 23, as the allegations of Paragraph 23 are directed at other parties.

24. No response by Dr. Sersland is required to Paragraph 24, as the allegations of Paragraph 24 are directed at other parties.

25. Dr. Sersland is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25.

26. No response by Dr. Sersland is required to Paragraph 26, as the allegations of Paragraph 26 are directed at other parties.

27. Dr. Sersland is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 27. Dr. Sersland denies the second sentence of Paragraph 27 as to himself.

28. Dr. Sersland is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28.

29. Dr. Sersland denies that he received the notice referenced in Paragraph 29.

30. No response is required to the allegations of Paragraph 30, as they are compound, vague, ambiguous, and not susceptible to a meaningful response. To the extent any response is required by Dr. Sersland, denied.

31. Dr. Sersland is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31.

32. Dr. Sersland is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32.

33.     No response by Dr. Sersland is required to Paragraph 33, as the allegations of Paragraph 33 are directed at other parties.

34.     No response by Dr. Sersland is required to Paragraph 34, as the allegations of Paragraph 34 are directed at other parties.

35.     No response by Dr. Sersland is required to Paragraph 35, as the allegations of Paragraph 35 are directed at other parties.

36.     No response by Dr. Sersland is required to Paragraph 36, as the allegations of Paragraph 36 are directed at other parties.

37.     No response by Dr. Sersland is required to Paragraph 37, as the allegations of Paragraph 37 are directed at other parties.

38.     Dr. Sersland is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38.  Dr. Sersland denies that he received the notice referenced in Paragraph 38.

39.     Dr. Sersland denies as to himself.

40.     Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs as if set forth herein.

41.     Denied.

42.     Denied.

43.     Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs as if set forth herein.

44.     Denied.

45.     Denied.

46.     Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs

as if set forth herein.

47.   No response is required to the allegations of Paragraph 47 because those
      allegations embody legal conclusions.  To the extent that a response is required,
      Dr. Sersland admits that he is a shareholder in MUA-Belize and that his duties as a
      shareholder are governed by the laws of Belize.

48.   Dr. Sersland denies as to himself.

49.   No response is required to the allegations of Paragraph 49 because those
      allegations embody legal conclusions.

50.   Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs
      as if set forth herein.

51.   Denied.

52.   Denied.

53.   Denied.

54.   Denied.

55.   Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs
      as if set forth herein.

56.   No response is required to the allegations of Paragraph 56 because those
      allegations are directed towards another party.  To the extent that a response is
      required of Dr. Sersland, denied.

57.   No response is required to the allegations of Paragraph 57 because those
      allegations are directed towards another party.

58.   No response is required to the allegations of Paragraph 58 because those
      allegations are directed towards another party.

59.     Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs
        as if set forth herein.

60.     No response is required to the allegations of Paragraph 60 because those
        allegations are directed towards another party. To the extent that a response is
        required of Dr. Sersland, denied.

61.     No response is required to the allegations of Paragraph 61 because those
        allegations are directed towards another party.

62.     No response is required to the allegations of Paragraph 62 because those
        allegations are directed towards another party.

63.     Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs
        as if set forth herein.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs
        as if set forth herein.

68.     Denied.

69.     No response is required to the allegations of Paragraph 69 because those
        allegations are directed towards another party.

70.     Denied.

71.     No response is required to the allegations of Paragraph 71 because those
        allegations embody legal conclusions.  To the extent that a response is required,
        Dr. Sersland admits that he is a shareholder in MUA-Belize and that his duties as a

shareholder are governed by the laws of Belize.

72. No response is required to the allegations of Paragraph 72 because those allegations are directed towards other parties.

73. Denied.

74. Denied.

75. Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs as if set forth herein.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Dr. Sersland repeats and reincorporates his responses to the preceding paragraphs as if set forth herein.

81. Denied [as to paragraph misnumbered as paragraph 76]

82. Denied [as to paragraph misnumbered as paragraph 77]

83. Denied [as to paragraph misnumbered as paragraph 78]

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Von Banks' equitable claims are barred by their unclean hands.

### THIRD AFFIRMATIVE DEFENSE

The Von Banks' legal claims are barred by the doctrine of in pari delicto.

### FOURTH AFFIRMATIVE DEFENSE

The Von Banks' claims are barred by the Von Banks' own breaches of contract.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Von Banks' breach of the covenant of good faith and fair dealing.

### SIXTH AFFIRMATIVE DEFENSE

The Von Banks' claims are barred by their own breaches of fiduciary duty.

### SEVENTH AFFIRMATIVE DEFENSE

The Von Banks have waived any claims they may have had against Dr. Sersland.

### EIGHTH AFFIRMATIVE DEFENSE

By their own conduct, the Von Banks are estopped from asserting the claims in their complaint.

### NINTH AFFIRMATIVE DEFENSE

Any damages incurred by the Von Banks are off-set by the damages incurred by Dr. Sersland arising out of the Von Banks' unlawful conduct.

### TENTH AFFIRMATIVE DEFENSE

The Von Banks' contractual claims are barred by the Statute of Frauds.

### ELEVENTH AFFIRMATIVE DEFENSE

The Von Banks' fraud claims fail to satisfy the heightened pleading standards applicable to those claims.

### TWELFTH AFFIRMATIVE DEFENSE

The Von Banks' conspiracy claims fail to satisfy the heightened pleading standards applicable to those claims.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Von Banks' derivative claims are defective in that the Von Banks failed to satisfy the notice and presentment requirements applicable thereto.

### FOURTEENTH AFFIRMATIVE DEFENSE

Any failure on the part of Dr. Sersland to pay any sums to the Von Banks is excused by the Von Banks' failure to satisfy conditions precedent for such payment.

### FIFTEENTH AFFIRMATIVE DEFENSE

With respect to any sums invested in any business entity relevant to this case, the Von Banks assumed their risk of loss of their principal.

### SIXTEENTH AFFIRMATIVE DEFENSE

The Von Banks' contractual claims are barred by a failure of consideration.

### SEVENTEENTH AFFIRMATIVE DEFENSE

The Von Banks' contractual claims are barred by the doctrine of accord and satisfaction.

### EIGHTEENTH AFFIRMATIVE DEFENSE

The Von Banks' contractual claims are barred by the doctrine of duress.

### NINETEENTH AFFIRMATIVE DEFENSE

The Von Banks' contractual claims are because conditions precedent were not satisfied.

### TWENTIETH AFFIRMATIVE DEFENSE

The Von Banks' claims for injunctive relief are barred by the doctrine of laches.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The Von Banks' litigation of their claims in this forum is barred by the doctrine of forum non conveniens.

## COUNTERCLAIM

### Parties

1.   The counterclaim plaintiff Jeffrey Sersland, MD., Inc. ("Dr. Sersland") is a resident of the Commonwealth of Massachusetts.

2.   The counterclaim defendant Peter Von Bank ("Mr. Von Bank") is, upon information and belief, is a resident of Shakopee, Minnesota.

3.   The counterclaim Katherine Von Bank ("Mrs. Von Bank") is, upon information and belief, is a resident of Shakopee, Minnesota. (Mr. and Mrs. Von Bank will collectively be referred to as "the Von Banks.")

### JURISDICTION

4.   The Court has subject matter jurisdiction over Dr. Sersland's counterclaims as those counterclaims arise from the same transaction and occurrences as the Von Banks' claims against Dr. Sersland.

5.   The Court has personal jurisdiction over the Von Banks as a result of their having transacted business in the Commonwealth of Massachusetts.

### FACTS

**A.  The Von Banks Receive a 20 Percent Interest in MUAB, Becoming Co-
Shareholders with Dr. Sersland.**

6.   In or about 2003, Dr. Sersland entered into an agreement with David Fredrick, Ph. D ("Fredrick") to purchase shares owned by Fredrick in Medical University of the

Americas Limited, f/k/a Medical University of the Americas Belize, Limited. (This entity shall be referred to herein as "MUAB."

7.   . In sum, Dr Sersland agreed to convey the sum of $850,000 to Fredrick over a period of time in exchange for all shares owned by Fredrick in MUAB.

8.    Subsequent to that agreement being reached, Dr. Sersland became acquainted with the Von Banks, who expressed interest in doing business with Dr. Sersland and MUAB and in participating in the ownership and management of MUAB.

9.   The Von Banks proposed that they would assume the obligation of $850,000 to Fredrick, in exchange for the repayment of that money by MUAB over time, and an immediate 20 percent in MUAB.  Specifically, the Von Banks agreed to pay Fredrick $500,000 immediately and the remaining $350,000 within 60 days.

10. MUAB agreed to those terms.

11. As a result of this agreement, the Von Banks became 20 percent owners in MUAB in or about 2004.

12. From the year 2004 through the present, the Von Banks have held shares in MUAB.

13. The Von Banks provided valuable consideration in exchange for their shares in MUAB.

14. The Von Banks still hold shares in MUAB.

15. Dr. Sersland has held shares in MUAB since the formation of that entity in or about July 2002.

16. For the entire time that the Von Banks have held shares in MUAB, Dr. Sersland has also held shares in MUAB.

17. The Von Banks, at all times relevant to their ownership of shares in MUAB have been aware that MUAB was an entity organized under the laws of Belize.

18. The Von Banks at all times relevant to their ownership of shares in MUAB have been aware that Dr. Sersland has also been a shareholder in MUAB.

### B.  The Von Banks Act Contrary to the Interests of MUAB Through Communications with Faculty and Staff.

19. During certain times when they have held shares in MUAB, the Von Banks have participated in the management of MUAB and/or have held themselves out as agents of MUAB.

20. Without limitation, during certain times when they have held shares in MUAB, the Von Banks have had communications with faculty and students of MUAB.

21. The Von Banks have engaged in communications with faculty and students of the MUAB that have been critical and disparaging of Dr. Sersland and of the management of MUAB generally. Those communications have been detrimental and damaging to the ongoing success of MUAB.

### C.  The Von Banks Cut a Side Deal with Fredrick Concerning the Same Funds That Were the Subject of an Agreement with MUAB.

22. With respect to the $850,000 that the Von Banks agreed to pay to Fredrick, they paid him only $500,000 and failed to pay the remainder.

23.  Following the failure of the Von Banks to pay the remainder of the sums due, Fredrick took retaliatory actions towards MUAB including, without limitation, interfering with MUAB's relationship with the TERI loan program.

24. Those retaliatory actions, which were prompted at least in part by the Von Banks' own conduct, interfered with the ability of MUAB to satisfy any obligations it

may have had to repay the Von Banks the $500,000 which they apparently paid
Fredrick.

25. Subsequent to Fredrick engaging in these retaliatory actions, upon information
and belief the Von Banks met with Fredrick in Gardner, Massachusetts.

26. Upon information and belief, the Von Banks entered into an agreement with
Fredrick through which they agree to pay him the remaining $350,000 previously owed
to Fredrick by MUAB. Upon information and belief, Fredrick in exchange agreed to
convey to the Von Banks all of the shares he owned in MUAB.

27. The Von Banks made this agreement knowing full well that they had already
entered into an agreement with MUAB to pay Fredrick these sums in exchange for
repayment of $850,000 and a 20 percent interest in MUAB.

28. Stated another way, the Von Banks made a second agreement concerning the
same funds. Having already received valuable consideration from MUAB in exchange
for their promise to pay Von Banks $850,000, they now sought consideration from
Fredrick in exchange for payment of the remaining $350,000 owed to Fredrick.

29. Upon information and belief, any shares conveyed to the Von Banks by
Fredrick were not registered by the Von Banks, with the result that the Von Banks never
in fact became the legal owners of such shares. However, the Von Banks, believing
themselves to the legal owners of Fredrick's shares, began holding themselves out to Dr
Sersland and others as the majority shareholders in MUAB.

**D.** **The Von Banks Use Their Putative Ownership of Additional MUAB Shares to
Intimidate the Serslands Into Disclaiming Interest in Julia Gardens Project.**

30. After coming to believe that they were legal owners of Fredrick's shares, the
Von Banks returned to Belize and held themselves out to Dr. Sersland and MUAB as

being the majority shareholders in MUAB. Dr. Sersland at this time had no reason to doubt that the Von Banks were in fact the majority owners, and thus was forced to accede to various unreasonable demands made by the Von Banks at that time.

31. For example, without limitation, the Von Banks used their alleged control over MUAB and alleged ownership of the Fredrick shares to force Dr. Sersland and his wife to relinquish their interest in Julia Gardens, a real estate project in which the Serslands and the Von Banks were involved in Belize.

32. More specifically, the Von Banks told Dr. Sersland that they would use their majority interest in MUAB to harm the Serslands and to prevent the Serslands from enjoying the fruits of their own investment in MUAB, if the Serslands did not relinquish their interests in Julia Gardens.

33. Believing they had no alternative, particularly given that they were facing other financial problems at the time, the Serslands agreed and under duress transferred their entire interest in Julia Gardens to the Von Banks.

### E.  The Von Banks Engage in Other Actions Contrary to the Interests of MUAB.

34. In addition to engaging in improper communications with faculty and staff of MUAB which were harmful to the interests of MUAB, the Von Banks have engaged in other acts contrary to the interests of MUAB.

35. Without limitation, in or about summer 2004, the Von Banks improperly, and without proper permitting and documentation sought to bring cadavers into Belize from the United States for use at MUAB.

36. Upon information and belief, the cadavers which the Von Banks sought to bring into Belize from the United States were improperly cured and were not fit for proper educational use.

37. The Von Banks efforts to import these cadavers into Belize resulted in Belize customs officers stopping the importation and issuing a warning from the Government of Belize.

38. According to information received by MUAB from Belize customs authorities, the Von Banks sought to import the cadavers in boxes emblazoned with the name "Von Hanson's Meats." Upon information and belief, Von Hanson's Meats is a Minneapolis corporation of which Peter Von Bank has a controlling interest and/or is an officer.

39. Other conduct of Peter Von Bank indicates that he has involved Von Hanson's Meats in the business affairs of MUAB and has also commingled funds of the two entities. Without limitation, in or about July 2006, Mr. Von Bank visited Dr. Sersland and told Dr. Sersland that he was in desperate need of $130,000 by September of 2006 because he had borrowed substantial sums from Von Hanson's Meats for use in activities related to MUAB and Julia Gardens.

40. The actions of Mr. Von Bank with respect to Von Hanson Meats may constitute, in addition to breaches of Mr. Von Bank's duties to MUAB and Dr. Sersland, breaches of his duties to Von Hanson's Meats and shareholders in that entity.

### F.  The Von Banks' Knowledge of and Participation in Misconduct of Fredrick.

41. At various times relevant to the facts alleged in the Von Bank's complaint, Fredrick, as a shareholder in MUAB, has engaged in acts that were contrary to the interests of MUAB.

42. The Von Banks have been aware that Fredrick, as a shareholder in MUAB, has engaged in acts that were contrary to the interests of MUAB.

43. Without limitation, the Von Banks became aware that had Fredrick interfered with MUAB's relationship with the TERI loan program.

44. Without limitation, the Von Banks became aware of Fredrick's acts concerning the TERI loans through a meeting attended by Mrs. Von Bank in Gardner, Massachusetts with Fredrick.

45. The Von Banks encouraged the wrongful acts of Fredrick by, at a minimum, failing to discourage those acts and failing to notify MUAB of those acts.

### G.  Mrs. Von Banks' Intentional Infliction of Emotional Distress Through Harassment of Dr. Sersland's Grandmother.

46. In or about 2005, Mrs. Von Bank made an unsolicited phone call to Gladys Useldinger, who is Dr. Sersland's grandmother and who was 91 years old at the time. The phone call was placed at about 2 a.m.

47. In the course of the phone call, which was lengthy, Mrs. Von Bank made spurious, false, and defamatory statements about Dr. Sersland to Ms. Useldinger. Without limitation, Mrs. Von Bank told her that Dr. Sersland was under investigation by the FBI and was a con man and criminal.

48. These statements, upon information and belief, were made with the intent of upsetting, intimidating, and distressing both Dr. Sersland and Ms. Useldinger.  Ms. Useldinger did in fact convey to Dr. Sersland that she found Mrs. Von Bank's phone call to be frightening, intimidating and distressing.  Learning that his grandmother had been harassed in this fashion was in turn extremely emotionally distressing for Dr. Sersland.

## COUNT I
### (Breach of Contract Concerning Julia Gardens)

49. Dr Sersland restates and incorporates by reference the allegations in all of the preceding paragraphs as if set forth fully herein.

50. As set forth in greater detail above, the Von Banks entered into an agreement with Dr. Sersland concerning the Julia Gardens project.

51. That agreement was supported by valuable consideration, with both Dr. Sersland and the Von Banks contributing time, funds, and effort to the Julia Gardens project.

52. The Von Banks breached that agreement by, without limitation, acting to deprive Dr. Sersland of the fruits of that agreement as set forth in more detail above.

53. As a result of the Von Banks' breach of contract, Dr. Sersland has suffered damages.

## COUNT II
### (Breach of Covenant of Good Faith and Fair Dealing Concerning Julia Gardens)

54. Dr Sersland restates and incorporates by reference the allegations in all of the preceding paragraphs as if set forth fully herein.

55. As set forth in greater detail above, the Von Banks entered into a contract with Dr. Sersland concerning the Julia Gardens project.

56. That agreement was supported by valuable consideration, with both Dr. Sersland and the Von Banks contributing time, funds, and effort to the Julia Gardens project.

57. As a result of his efforts in the Julia Gardens project, Dr. Sersland reasonably expected to share in the fruits of that project.

58. As set forth in more detail above, the Von Banks acted to deprive Dr. Sersland of the fruits of the agreement between the parties concerning Julia Gardens.

59. Those actions were in breach of the covenant of the good faith and fair dealing which is implied into contracts under Massachusetts and/or Belize law.

60. As a result of the Von Banks' breaches of the covenant of good faith and fair dealing, Dr. Sersland has suffered damages.

<u>COUNT III</u>
**(Breach of Fiduciary Duty Concerning Julia Gardens)**

61. Dr Sersland restates and incorporates by reference the allegations in all of the preceding paragraphs as if set forth fully herein.

62. As set forth in greater detail above, the Von Banks entered into a partnership with Dr. Sersland concerning the Julia Gardens project.

63. That partnership was supported by valuable consideration, with both Dr. Sersland and the Von Banks contributing time, funds, and effort to the Julia Gardens project.

64. The Von Banks owed Dr. Sersland fiduciary duties in the context of that project.

65. The Von Banks breached their fiduciary duties owed to Dr. Sersland by, without limitation, acting to deprive Dr. Sersland of the fruits of that agreement as set forth in more detail above.

66. As a result of the Von Banks' breaches of fiduciary duty, Dr. Sersland has suffered damages.

## COUNT IV
### (Breach of Fiduciary Duty Concerning MUAB)

67. Dr Sersland restates and incorporates by reference the allegations in all of the preceding paragraphs as if set forth fully herein.

68. As set forth in greater detail above, Dr. Sersland and the Von Banks have at various times both owned shares in MUAB.

69. As a result of their mutual ownership of shares in MUAB, Dr. Sersland and the Von Banks owed each other fiduciary duties.

70. The Von Banks breached the fiduciary duties owed to Dr. Sersland in this regard by, as set for in more detail above, engaging in multiple acts that were contrary to the interests of MUAB and which damaged MUAB.

71. As a result of these breaches of fiduciary duty, Dr. Sersland has suffered damages.

72. The Von Banks owed Dr. Sersland fiduciary duties in the context of that project.

73. The Von Banks breached their fiduciary duties owed to Dr. Sersland by, without limitation, acting to deprive Dr. Sersland of the fruits of that agreement as set forth in more detail above.

74. As a result of the Von Banks' breaches of fiduciary duty, Dr. Sersland has suffered damages.

## COUNT V

### (Fraud/Misrepresentation)

75. Dr Sersland restates and incorporates by reference the allegations in all of the preceding paragraphs as if set forth fully herein.

76. As set forth in more detail above, the Von Banks made certain representations to Dr. Sersland concerning Julia Gardens, MUAB, and the loan agreement between MUAB and the Von Banks which were not accurate.

77. Those inaccurate statements were calculated to deceive Dr. Sersland, and did fact deceive him.

78. Without limitation, Dr. Sersland was deceived and coerced into turning over his interests in Julia Gardens to the Von Banks, and was deceived into believing that the Von Banks had received shares in MUAB from Fredrick.

79. As a result of the Von Banks' misrepresentations and deceptions, Dr. Sersland has suffered damages.

## COUNT VI

### (Intentional Infliction of Emotional Distress Against Katherine Von Bank)

80. Mrs. Von Bank, through her conduct as described above, inflicted emotional distress upon Dr. Sersland.

81. Specifically, Mrs. Von Bank knew or should have known that her conduct in contacting and harassing Dr. Sersland's grandmother would cause emotional distress to Dr. Sersland.

82. Mrs. Von Banks' conduct in contacting and harassing Dr. Sersland's 91-year-old grandmother, to whom Mrs. Von Bank had never spoken to before, particularly at 2

a.m. unsolicited and slandering Dr. Sersland with accusations of criminality, was

extreme and outrageous and beyond all bounds of decency.

83. As a result of Mrs. Von Bank's actions, Dr. Sersland has suffered extreme

emotional distress and damages in an amount to be proven at trial

## **PRAYERS FOR RELIEF**

Plaintiff-in-Counterclaim Jeffrey Sersland, MD respectfully requests that this Court:

1.    Grant Dr. Sersland judgment against the Von Banks on Counts I-VI;

2.    Enter an award of damages against the Von Banks in Dr. Serslands' favor

       on Counts I-VI; and

3.    Grant Dr. Sersland such further relief as is just, warranted, and reasonable

       under the circumstances.

## **JURY DEMAND**

Jeffrey Sersland, MD hereby demands a jury trial on all claims brought against

him and all counterclaims he has brought that are so triable.

Respectfully submitted,

Jeffrey Sersland, MD,

By his attorney,

/s/  C. Alex Hahn

C. Alex Hahn (BBO #634133)
THE HAHN LAW GROUP
46 Lewis Street, Suite 6
Boston, MA 02113
(857) 753-4182

Dated: November 7, 2007