UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PETER AND KATHERINE VONBANK )
          Plaintiff )
v. )
    ) Civil Action No.:
JEFFREY AND RENAE SERSLAND, et al. ) 07-40205-FDS
          Defendants )

**ANSWER OF PETER AND KATHERINE VON BANK
TO COUNTERCLAIM OF JEFFREY SERSLAND**

The Plaintiffs in this matter respectfully respond to the Counterclaims as follows. Any allegation that is not specifically admitted is hereby DENIED:

1. The allegations of Paragraph 1 are admitted, on information and belief.

2. The allegations of Paragraph 2 are admitted.

3. The allegations of Paragraph 3 are admitted.

4. The allegations of Paragraph 4 consist of conclusions of law and as such no response is required.

5. The allegations of Paragraph 5 consist of conclusions of law and as such no response is required.

6. The allegations of Paragraph 6 are admitted, on information and belief.

7. Denied that the consideration for Dr. Fredrick's shares was limited to $850,000, based on information and belief.

8. Denied. In fact, the Von Banks simply loaned the Serslands money and when the money was not promptly repaid as promised they sought security for the loan in the form of Serlands' shares in MUAB.

9.  Denied, except that the Von Banks admit that they loaned $500,000 to Sersland so that Sersland could satisfy an obligation he explained he owed to Dr. Fredrick.

10. Denied in that no such terms were discussed, and therefore MUAB could not have agreed to such terms.

11. Admitted that the Von Banks became 20 percent owners of MUAB. Denied as to the circumstances of the acquisition of ownership shares.

12. Admitted.

13. Admitted.

14. Admitted.

15. The Von Banks are without knowledge or information sufficient to form a belief as to the allegations of Paragraph 15 and call upon the Plaintiff-in-Counterclaim to prove same.

16. The Von Banks are without knowledge or information sufficient to form a belief as to the allegations of Paragraph 16 and call upon the Plaintiff-in-Counterclaim to prove same.

17. Admitted.

18. Denied.

19. Denied, except admitted that one or more of the Von Banks was a director of MUAB, uninvolved in day to day management of the business.

20. Admitted that the Von Banks have from time to time communicated with faculty or staff at MUAB, but deny that is any indication of management control.

21.     Admitted that at the time that Serslands refused to honor their obligation to repay the Von Banks, which was at the same time the Serslands caused the business to turn to ruin, and refused to communicate or meet with the Von Banks, the Von Banks did engage in conversation with students, staff and faculty, in which these people voiced their concerns and complaints about the management of MUAB, and the Serslands specifically.  Admitted that the Von Banks provided honest and accurate responses to their requests for information.  The remaining allegations of Paragraph 21 are denied, with specific denial that the conversations caused any detriment or damage to MUAB.

22.     Denied that the Von Banks agreed to pay Dr. Frederick anything, denied they were obligated to pay Dr. Fredrick, but admitted that as part of the $1.8 million loan to the Serlands as reflected by the promissory note signed by the Serslands, they provided Dr. Fredrick with their wire for $500,000, paid on behalf of Sersland and for which Sersland was obligated to repay them.

23.     Denied that the Von Banks failed to pay the remainder of any sums due Dr. Fredrick, deny they were ever obligated to pay such sums, and denied, on information and belief, that Dr. Fredrick's involvement with the Teri Loan program regarding MUAB, if any, caused any damage to MUAB.

24.     Denied.

25.     Denied that any retaliation occurred, but admitted that the Von Banks met with Dr. Fredrick, including a meeting that was attended by Renae Sersland.

26.     Denied.

27.     Denied.

28.     Stated another way, denied.

29. Denied that the Von Banks ever received shares from Dr. Fredrick. Denied that the Von Banks held themselves out to be majority shareholders.

30. Denied.

31. Admitted that Sersland willingly agreed to convey his shares in Julia Gardens to the Von Banks as an inducement for the Von Banks' continued financial support and cooperation as well as his acknowledgement that he was unable to meet the agreed upon promises in regard to Julia Gardens. Denied Sersland was forced to do so, and the remaining allegations of paragraph 31 are denied.

32. Denied.

33. The Von Banks cannot confirm or deny the state of mind of the Serslands, except to offer that any lack of choice on the part of the Serslands with regard to Julia Gardens, as with most financial arrangements that involved them, is largely due to the fact that the Serslands did not satisfy their obligations on the project.

34. Denied that any act in which the Von Banks have engaged is harmful to the interest of MUAB.

35. Denied that the Von Banks did so, or had any ability to do so.

36. Denied as no such cadavers as describe in Paragraph 36 existed.

37. Denied, except that if such a warning was issued to MUAB, the Von Banks had nothing to do with it and have no knowledge of it.

38. The last sentence of Paragraph 38 is admitted. The remaining allegations of Paragraph 39 are denied.

39. Denied, except that at some point of time, Peter Von Bank did tell Sersland he needed his money back.

40. Denied, and denied that Sersland has standing to speak on behalf of Von Hanson's meats, or that he has any reason to do so in a pleading, except to state a veiled threat to involve Peter Von Bank's business in Sersland's defense.

41. Denied that the Von Banks have any knowledge that Fredrick has acted against the interest of MUAB.

42. Denied.

43. Denied.  The Von Banks are aware, however, that Dr. Fredrick attempted to save the TERI loan program for MUAB.

44. Admitted that it was during this meeting, and others, that K. Von Bank learned that Dr. Fredrick recommended to the bank administering the TERI loan program that it revive or continue its loan program with MUAB.

45. Denied.

46. Admitted that after Jeffrey Sersland refused to take or return calls from the VonBanks, K.VonBank did attempt to locate Jeffrey Sersland by contacting those who may know of his location.  Admitted that Katherine Von Bank called the grandmother of Jeffrey Sersland.  Denied that the call was made at 2 a.m., at least of the time zone where the call was placed.  Denied as to the characterization of the conversation.

47. Denied, but not denied that Jeffrey Sersland is a con man.

48. Denied.

## **COUNT I FOR BREACH OF CONTRACT**

49. The Von Banks incorporate by reference their previous responses to these counterclaims as if set forth herein.

50. Admitted that an agreement existed, denied that the Counterclaim sets forth the agreement. Denied that Sersland ever satisfied the agreement.

51. Admitted that the Von Banks contributed consideration. Denied that Sersland contributed consideration that he agreed to provide.

52. Denied that Sersland was entitled to any fruit of the agreement, because he failed and refused to provide consideration as he was obligated. In fact, he failed and refused to finance the seeds, fertilizer or even the water upon which any tree, let alone any fruit, could grow. In fact, he starved the tree before the fruit was allowed to bloom.

53. Denied.

## COUNT II FOR BREACH OF IMPLIED CONTRACT

54. The Von Banks incorporate by reference their previous responses to these counterclaims as if set forth herein.

55. Denied that a contract was formed, as it is denied that Sersland provided agreed-upon consideration.

56. Admitted that the Von Banks contributed consideration. Denied that Sersland contributed agreed-upon consideration.

57. While Sersland probably did expect to share the fruits of the Julia Gardens project, the Von Banks deny that his expectation was reasonable, because he failed and refused to contribute to the project as he had promised.

58. Denied. The fruits of any anticipated agreement between the Von Banks and Sersland with regard to Julia Gardens was allowed to whither on the vine due to Sersland's refusal to contribute to the project as he had promised nor honor his agreement. The Von Banks, therefore, did not cause him to lose any enjoyment.

59. Denied.

60. Denied.

### COUNT III FOR BREACH OF FIDUCIARY DUTY

61. The Von Banks incorporate by reference their previous responses to these counterclaims as if set forth herein.

62. The Counterclaims make no mention of a partnership, and therefore and as a matter of fact the existence of any such partnership is denied.

63. Admitted that the Von Banks contributed consideration to a business arrangement, but not a partnership. Denied that Sersland contributed agreed-upon consideration.

64. Denied.

65. Denied, and once again the Von Banks deny that Sersland had any right to fruit, as the Von Bank's attempts to cause Sersland to perform as he had promised turned out to be entirely fruitless.

66. Denied.

### COUNT IV FOR BREACH OF FIDUCIARY DUTY

67. The Von Banks incorporate by reference their previous responses to these counterclaims as if set forth herein.

68. Admitted.

69. Denied that the Von Banks are convinced they owned shares in MUAB concurrently with Sersland, but to the extent they did, such a duty is a matter of law, and the Von Banks are in no position to respond.

70. Denied.

71. Denied.

72. See Answer to Paragraph 69.

73. Denied that Sersland is entitled to the fruits of any agreement regarding MUAB because of the sour taste left in the mouths of the Serslands after they were treated to the spoiled fruit left in the wake of Sersland's action.

74. Denied.

### COUNT V for FRAUD/MISREPRESENATION

75. The Von Banks incorporate by reference their previous responses to these counterclaims as if set forth herein.

76. Denied.  Further responding, the Von Banks point out that the Plaintiff-in-Counterclaim does not specify the representations to which he refers.

77. Denied that Sersland was deceived, and denies that any inaccurate statements were made that were intended to deceive Sersland or otherwise.

78. Denied.

79. Denied.

### COUNT VI FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80. The Von Banks incorporation by reference their previous responses to these counterclaims as if set forth herein.

81. Denied that Katherine Von Bank harassed anyone, and therefore denied she should have made any conclusions with regard to any third person.

82. Denied.

83. Denied.

WHEREFORE, the Defendants In Counterclaim, Peter and Katherine Von Bank, respectfully requests this Court dismiss the Counterclaims of Jeffrey Sersland.

## AFFIRMATIVE DEFENSES

**FIRST AFFIRMATIVE DEFENSE**

The Counterclaim of Jeffrey Sersland should be dismissed because of his unclean hands.

**SECOND AFFIRMATIVE DEFENSE**

The Counterclaim should be dismissed because it is frivolous and without merit.

**THIRD AFFIRMATIVE DEFENSE**

The Counterclaim should be dismissed because of Sersland's own Breach of Contract.

**FOURTH AFFIRMATIVE DEFENSE**

The Counterclaim should be dismissed because of Sersland's Fraud upon the Plaintiffs.

**FIFTH AFFIRMATIVE DEFENSE**

The Count for Fraud/Misrepresentation fails to meet the pleading requirement of Federal Rules of Civil Procedure, 9(b).

**SIXTH AFFIRMATIVE DEFENSE**

The claims for breach of contract are barred by failure of consideration.

## JURY DEMAND

The Defendants in Counterclaim demand a jury on all counts of the Counterclaims.

Respectfully submitted,
Peter and Katherine Von Bank,
By their Attorney,

Kenneth I. Gordon, BBO# 556762
63 Chatham Street
 Boston, MA 02109
(617) 742-4602